# MANLY *v.* JANNEY.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

In an interference involving an invention relating to controlling apparatus for hydraulic variable speed gear devices or power-driven mechanism, where the question was as to whether one of the parties, prior to the construction and reduction to practice of his adversary, had constructed and successfully operated a full-sized device embodying the issue which he claimed to be an actual reduction to practice, and such party introduced his device in evidence, and also introduced evidence, which was not disputed, tending to show that the tests he had made of it had demonstrated its utility for any purpose to which such an apparatus could be applied; and the prima facie case thus made out was not rebutted by the other party by the calling of a witness who had knowledge of the tests and the circumstances under which they were made, or by an actual test of the apparatus which was in evidence,— it was *held* that the party claiming actual reduction to practice was entitled to an award of priority. (Citing *Stanbon* v. *Howe*, 34 App. D. C. 418; and *Smith* v. *Kihlgren*, 43 App. D. C. 193.)

No. 1041. Patent Appeals. Submitted November 14, 1916. Decided December 4, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Reversed.*

The facts are stated in the opinion.

*Mr. W. B. Morton* for the appellant.

*Mr. John P. Bartlett* and *Mr. Heath Sutherland* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of

Patents in an interference proceeding awarding priority of invention to the appellee, Reynold Janney, on the ground that Charles Matthews Manly had not proven reduction to practice prior to the filing of Jenney's application, which occurred less than a month before Manly's application was filed.

The invention, according to the Janney specification, "relates to controlling apparatus for hydraulic variable speed gear devices," while according to the Manly specification it "relates to control apparatus for power-driven mechanism, and particularly to apparatus for controlling the driving mechanism of the revolving gun turrets employed in modern naval vessels." Accepting these statements as to the general character of the invention, the Patent Office placed the applications in the class of hydraulics. Upon the declaration of the interference Janney moved to dissolve, upon the ground of nonpatentability. This motion the Commissioner sustained, and thereupon suggested the following count as defining the common patentable subject-matter of the applications: "The combination of a driving member, a driven member, an hydraulic variable speed gear interposed between these members, and means for controlling the gear comprising a manually rotatable controlling member, and means for altering the gear ratio with changes of speed of movement of the controlling member, whereby the driven member is caused to move at a speed proportionate to the speed of movement of the controlling member."

Janney took no testimony and, therefore, is restricted to his filing date of September 16, 1911. Manly's claim to priority is based upon a prior application, now patent No. 1,101,864, and on evidence of actual reduction to practice of the specific embodiment of the subject-matter of the count. The Examiner of Interferences ruled that the earlier application did not disclose the subject-matter of the issue, and in this ruling he was sustained by the higher tribunals. He found, however, that in July of 1909 Manly constructed and operated a full-sized device embodying the issue. This device was introduced in evidence and its authenticity was not questioned, but the Examiner was not satisfied with the proof of its successful operation; in other

words, he ruled that reduction to practice had not been proven and, therefore, awarded priority to Janney. The Examiners in Chief reversed this decision and awarded priority to Manly upon the ground that his evidence proved reduction to practice as claimed. On appeal the Commissioner directed attention to the fact that he had "thought the device patentable because of alleged utility in the particularly difficult art of turret construction," and hence that Manly's evidence as to reduction to practice might "properly be more strictly criticized than would ordinarily be warranted." He accepted Manly's testimony as candid and the statements of his witness McDonald as quite probable. "Moreover," said the Commissioner, "Janney could have tested the apparatus to refute what Manly and McDonald claimed for it." Notwithstanding these expressions, however, the Commissioner, being of opinion that the range of operation in the tests mentioned by Manly and McDonald did not cover speeds in the neighborhood of zero, and that it had not been demonstrated that "his apparatus was useful for some definite purpose," ruled that reduction to practice had not been established, and therefore awarded priority to Janney.

We first will consider the question whether Manly has proven reduction to practice prior to Janney's filing date, for if that question is determined in the affirmative, it will be unnecessary to examine the earlier application; and in approaching a consideration of this question we must have in mind that the use of the apparatus involved is not restricted to gun turrets, either in the applications of the parties or in the terms of the issue. The question therefore is, as intimated by the Commissioner, whether from the evidence we are able to say that the apparatus which Manly constructed and tested "was useful for some definite purpose."

Mr. Manly is vice president and chief engineer of the Manly Drive Company, and before his connection with that company was a consulting mechanical engineer. It appears that he has a wide range of knowledge and is highly skilled in this art. In May, 1909, the Bethlehem Steel Company, with which Mr. Manly had a working agreement, submitted bids to the Navy

Department to supply hydraulic variable speed gears for operating the turrets of battleships. Thereupon a Mr. Stout, who had charge of the matter for the Bethlehem Company, held various conferences with Mr. Manly, and finally the latter constructed a crude device embodying the invention of the issue, and this, early in July, was shown Mr. Stout. Mr. Manly testified that Mr. Stout "criticized the sluggishness of the control at very low speeds, and stated that it did not seem to him to be as positive and as free from lost motion at center as we ought to have for the turret-turning gear." Thereupon Mr. Manly explained another and more simple system, which appealed more strongly to Mr. Stout, although Mr. Manly preferred the device of the issue, believing that the faults which Mr. Stout criticized were due "to the crudeness of the apparatus" with which the first tests were made. A little later the Bethlehem company, in a letter to Mr. Manly's company, inclosed a copy of their report to the Navy Department, containing the following: "We beg to state that we have developed and tested two systems of distant control for this gear, both of which show very satisfactory results. As tested, the controls were made of materials picked up in the shop and were consequently rather crude. Being satisfied by the preliminary results thus obtained, we are now proceeding to manufacture a control of each kind more carefully worked out and constructed."

After his interview with Mr. Stout, Mr. Manly immediately commenced the construction of full-sized devices for carrying out the two systems referred to in the Bethlehem company's report to the Navy Department. The apparatus embodying the issue was built in conformity to the drawings of the Manly application; in other words, it was a full-sized working apparatus. It is unnecessary to explain it in detail, since, as previously stated, its authenticity was not questioned by any of the tribunals. Upon the completion of this apparatus it was operated, according to Mr. Manly's testimony, almost continuously for several days. He says: "In making the tests we had a tachometer which instantaneously showed the speed at the delivery end or motor shaft of the gear, and I myself usually

during the tests held the tachometer against the motor shaft, and by signaling to one of our workmen, usually McDonald, who was operating the hand pump, would have him bring the speed of the motor shaft to whatever speed I wanted, by turning his hand pump at the proper rate.  *  *  *  Mr. McDonald, who operated the hand pump most of the time during the tests, became quite expert at quickly bringing the speed of the hydraulic motor to whatever speed I called out for him to give me. It took a little practice for a man to get so that he could turn perfectly steadily, and thus hold the speed of the hydraulic motor steady, *as the control cylinder responded very sensitively to change in the rate at which the man pumped.*" Mr. McDonald, who was foreman of the shop, was asked to describe how the control mechanism operated, and replied: "I stood on one side of the room where the hand pump was located. Mr. Manly stood on the other side of the room by the testing machine, and held the tachometer on the hydraulic motor shaft, and called out to me the speeds that he wanted, and signaled whether I should go faster or slower in order to give the speeds that he wanted. Sometimes Mr. Manly would call for a sudden change in speed from very high speed to very low speed, or from very low speed to very high speed, and signal accordingly, whether I was to turn faster or slower, *and bring it to exactly the point he wanted.*" Mr. McDonald gave the names of three other employees of the shop who were present at these tests. On July 28th Mr. Stout witnessed a test of this apparatus, as well as the other mentioned in the Navy Department letter. He thought that system cheaper to build and simpler, and therefore concluded not to show the Department the system of the issue unless some objection was raised to the other. Mr. Stout expressed no objection to the apparatus of the issue, but preferred the other for the reasons stated.

It thus appears that long prior to Jenney's filing date Manly constructed an apparatus involving the invention covered by the count of the issue, which apparatus he preserved and introduced in evidence. He testified that in the tests of this apparatus he was able fully to control the speed of he motor shaft, "as the

control cylinder responded very sensitively to changes in the rate at which the man pumped." In this we think he was fully corroborated by the witness McDonald, for Mr. McDonald testified that "sometimes Mr. Manly would call for a sudden change in speed from very high speed to very low speed, or from very low speed to very high speed, and signal accordingly, whether I was to turn faster or slower, and bring it to exactly the point he wanted." If we are to accept this testimony at its face value, and we see no reason why we should not, the conclusion is irresistible that the tests made demonstrated the utility of the apparatus for any purpose to which such an apparatus could be applied. Janney did not even cross-examine Manly and his witness McDonald, but he now attempts to criticize Mr. Manly for not calling Mr. Stout as a witness. We do not think this criticism well founded. Manly, as above noted, clearly proved the construction and test of the apparatus by evidence which we find to be consistent and convincing. As pointed out by the Commissioner Mr. Stout "was a man of large business and it might have been difficult to induce him to testify voluntarily." Moreover, having at least made out a prima facie case of reduction to practice, the burden then was shifted to Janney, and this burden he did not attempt to sustain. It certainly would have been as easy for him to call Mr. Stout in rebuttal as it would have been for Manly to produce him in proving his case.

There is another feature of the case that must not be left out of view. Janney here depends wholly upon a constructive reduction to practice. Manly's evidence, as above noted, clearly establishes the making of the very apparatus of the issue. Had Janney really entertained any doubt as to the operativeness of that apparatus, he could have tested it when it was introduced in evidence. Had its operation been unsuccesful, there would have been some reason for Janney to challenge Manly's contention that it was successfully operated when originally tested. *Stanbon* v. *Howe,* 34 App. D. C. 418; *Smith* v. *Kihlgren,* 43 App. D. C. 193.

The decision must be reversed and priority awarded Manly.

*Reversed.*